315 So.2d 82 (1975)
Robert N. SMITH, Plaintiff-Appellant,
v.
MAX THIEME CHEVROLET COMPANY, INC. and General Motors Corporation, Defendants-Appellees.
No. 12546.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1975.
*84 Gahagan & Gahagan, by Henry C. Gahagan, Jr., Natchitoches, for plaintiff-appellant.
Polk, Foote, Randolph, Percy & Ledbetter by Edward G. Randolph, Jr., Alexandria, for General Motors, Inc.
James L. Womack, Winnfield, for Max Thieme Chevrolet Co., Inc.
Before BOLIN, HALL and DENNIS, JJ.
DENNIS, Judge.
This is a redhibitory action. Plaintiff, an architect, bought for use in his profession a new 1972 Chevrolet pickup truck from defendant automobile dealer, Max Thieme Chevrolet Company, Inc. for a price of $2,921.88, including sales taxes, with funds which the plaintiff had borrowed from his bank. The dealer had acquired the truck from defendant manufacturer, General Motors Corporation. Plaintiff began to discover defects in the truck immediately after the sale. The major vices consisted of water leaks in the cab, severe vibration of the transmission, and overheating of the engine. He attempted for some time to have the defects corrected before seeking to rescind the sale. During this period he made limited use of the truck and drove it approximately 15,000 miles.
*85 Plaintiff sued the dealer and the manufacturer, alleging the existence of redhibitory defects rendering the truck unfit for use in his practice, and prayed for a recission of the sale, return of the purchase price, reimbursement of finance charges and other expenses occasioned by the sale, and attorney's fees. After a trial on these issues, the district court found that the vehicle was so defective the buyer would not have purchased it with knowledge of the defects. Judgment was rendered rescinding the sale, awarding plaintiff $2,921.88, which is the aggregate of the purchase price and sales taxes, but rejecting plaintiff's claims for attorney's fees and finance charges, and granting defendants a credit of $1,200 against the judgment as compensation for plaintiff's use of the truck.
Plaintiff appealed contending the trial court erred in awarding defendants a credit against the judgment as compensation for his use of the vehicle, and in failing to award plaintiff attorney's fees and repayment of finance charges. Defendants did not appeal.

1. Plaintiff's Right To Rescind The Sale
In Louisiana sales, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use. C.C. Arts. 2475, 2476, 2520; Rey v. Cuccia, 298 So.2d 840 (La.Sup.Ct.1974). A redhibitory defect entitling the buyer to annul the sale is a defect in a thing sold "which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." Article 2520. The buyer must prove that the defect existed before the sale was made to him. Article 2530. Rey v. Cuccia, supra.
The trial court held that plaintiff proved these essential elements of his case, and defendants did not appeal. Therefore, in our consideration of the proceedings, we begin with the premise that plaintiff is entitled to a recission of the sale and to all other consequences which flow from a successful redhibitory action.

2. Attorney's Fees
The Civil Code draws a basic distinction between sellers with and without knowledge of the defects of the thing sold in providing for the measure of their liability in redhibitory actions. It provides:
"Art. 2531. The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses. (Prior to amendment by Acts 1974, No. 673, § 1.)[1]

*86 * * * * * *
"Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
The trial judge determined that Max Thieme Chevrolet Company, Inc. was without knowledge of the vices of the truck at the time of the sale. Plaintiff does not question this finding of fact. Therefore, the dealer was bound only to restore the price and the expenses of the sale in accordance with C.C. Art. 2531, and the trial court's rejection of a judgment for attorneys' fees against Max Thieme Chevrolet Company, Inc. was not erroneous.
The record contains evidence to the effect that the malfunction of the transmission and the leaks in the cab of the truck were due to defects in their manufacture. In his written reasons for judgment the trial judge expressly found that the problem in the transmission was "chargeable to General Motors, the manufacturer of this vehicle." Because General Motors Corporation did not appeal from the judgment below, it has been established for purposes of our review that at least one redhibitory defect in the manufacture or design of the truck existed at the time the manufacturer sold it to the dealer.
Recently the Louisiana Supreme Court held that a consumer may recover from the manufacturer for pecuniary loss resulting from the purchase of a new automobile that proves unfit for use because of latent defects, even if there is no privity between the consumer and the manufacturer. Media Production Consultants v. Mercedes-Benz of N. A., Inc., 262 La. 80, 262 So.2d 377 (1972). In a later case the court made it clear that the consumer's cause of action is for the most part governed by Civil Code principles pertaining to the redhibitory action. Rey v. Cuccia, supra.
There are apt to be conceptual difficulties in this marriage of the modern consumer protection policy and the redhibitory action, which was conceived in the context of a simpler market. We find, however, that one of the thorny problems, with which we were prepared to deal, viz., whether the manufacturer must pay attorneys' fees, has been resolved. It was established in Media Production Consultants, Inc. v. Mercedes-Benz of N. A., Inc., supra, that the manufacturer may be held solidarily liable for performance of the dealer's obligations to restore the retail price and expenses of the sale as provided by Article 2531. In Rey v. Cuccia, supra, the Supreme Court held that in addition to his solidary obligations the manufacturer is liable to the consumer for attorneys' fees. This conclusion was based on the jurisprudential rule that the manufacturer is presumed to know of the defects in the thing made by him, and consequently, is liable under Article 2545 for damages and attorneys' fees, in addition to restitution of the price and repayment of the expenses of the sale. Radalec, Incorporated v. Automatic Firing Corporation, 228 La. 116, 81 So.2d 830 (1955); Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Company, 114 La. 498, 38 So. 432 (1905). Thus the manufacturer's liability will be measured by Article 2531 and Article 2545 when a consumer successfully sues both the dealer and the manufacturer in redhibition. Compare, however, concurring opinion of Dixon, J., Media Production Consultants v. Mercedes-Benz of N. A., Inc., supra; Casenote, 47 Tul.L.Rev. 473 (1973).
Prior to commencing trial the parties stipulated that if attorney's fees were awarded they should be fixed at one-third of the net amount of any judgment in favor of plaintiff. In view of the principles set forth above, we conclude plaintiff is entitled to a judgment in such amount against General Motors Corporation in addition *87 to any sum for which the manufacturer may be held solidarily liable with the dealer.

3. Compensation For Use of The Truck
There is a divergence of opinion relating to the purchaser's obligation to pay the vendor for the former's personal use of the property following a cash sale which has been rescinded. The Louisiana Supreme Court has held, in cases involving cash sales, that the buyer does not have to pay for his use of the thing from the time of the purchase until recission of the sale where it is offset by the seller's use of the cash price during the same period. Farmer v. Fisk, 9 Rob. 351 (1844); Harvey v. Kendall, 2 La.Ann. 748 (1847). Accord: Rousseau & Company, Inc. v. Dolese, 8 La.App. 785 (1928). Of course, the same result should not follow in cases where the seller has extended credit to the buyer and therefore did not have use of the purchase price during the buyer's use of the thing. See Weinstein, The Nature of the Remedy For A Redhibitory Vice, 4 Tul.L.Rev. 627 (1930).
These early cases and one later Court of Appeal decision indicate inferentially that they buyer's personal use is not a "fruit" of the thing which must be returned to the seller as provided by Article 2531 of the Civil Code. Williams v. Daste, 181 So.2d 247 (La.App., 4th Cir. 1965). See Smith, The Work of the Louisiana Appellate Courts For The 1965-66 Term, 27 La.L. Rev. 465 (1967). This interpretation is in keeping with the basic theories of the Civil Code which recognize the "fructus", "usus" and "abusus" as separate elements of ownership of property. La.Civil Code Art. 491; Queensborough Land Company v. Cazeaux, 136 La. 724, 736, 67 So. 641, 645 (1915); 3 Yiannopoulos, La.Civ.L.Tre. § 1 (1968). It is also consistent with the idea evident elsewhere in the Civil Code that fruits are things derived from or produced by other things. La.Civil Code Art. 498-503; 1 Yiannopoulos, La.Pract. § 20 (1966).
One Court of Appeal has reached the same result as the Supreme Court but for different reasons. Hebert v. Claude Y. Woolfolk Corporation, 176 So.2d 814 (La. App., 3d Cir. 1965). In this case it was held that the buyer was entitled to the return of his entire purchase price even though the defective refrigerator truck had been driven 8,500 miles in 7½ months. The court reasoned that the use of a vehicle with redhibitory defects is at the risk of the seller during the period in which attempts are being made by him to repair the defects, if such defects are ultimately found not repairable and do in fact render such vehicle totally useless for the purpose for which it was purchased. In the instant case, however, the plaintiff refused the dealer's offer to make further repairs in April, 1973, and continued to drive the truck until the time of the trial in March, 1974. Therefore, the holding in Hebert v. Claude Y. Woolfolk Corporation, supra, is not applicable to the facts in the present case.
In a more recent series of cases, other Courts of Appeal have allowed the seller compensation for the purchaser's use of the object prior to recission of the sale, without requiring any offsetting payment by the seller for his use of the cash price. Ticheli v. Silmon, 304 So.2d 792 (La.App., 2d Cir. 1974); Dunlap v. Chrysler Motors Corporation, 299 So.2d 495 (La.App., 4th Cir. 1974); Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App., 1st Cir. 1973); Kiefer v. Bernie Dumas Buick Company, 210 So.2d 569 (La.App., 4th Cir. 1968); Bergeron v. Mid City Motors, Inc., 162 So.2d 835 (La.App., 1st Cir. 1964); However, in these cases, the courts did not discuss the Supreme Court holdings or state why the buyer's use of the property was no longer to be offset by the seller's use of the price.
*88 We are unable to find any decision in which the Supreme Court has modified the position adopted in the Farmer and Harvey cases. It seems to be the better view for several reasons. The object of Article 2531 is to place the parties in the same position they were in before the sale as nearly as possible under the circumstances. Tucker v. Central Motors, 220 La. 510, 57 So.2d 40 (1952); Savoie v. Snell, 213 La. 823, 35 So.2d 745 (1948). Requiring the buyer to pay for his use of the thing without an equivalent payment by the seller for use of a cash price tends to defeat this purpose. Furthermore, this practice by some of the Courts of Appeal appears to have begun in the Bergeron case, supra, in which the court affirmed, without comment, a District Court judgment which allowed only the car dealer such a credit. No basis for the decision was given either by the Court of Appeal or the Trial Court in the Bergeron case. See Brown v. Mid City Motors, Inc., 248 So.2d 27 (La.App., 1st Cir. 1971).
However, the Supreme Court, in the Farmer and Harvey cases, supra, did not hold that in the recission of cash sales the use of the thing by the purchaser and the use of the purchase money by the seller must in all cases be considered as exact equivalents. Cf. Comment, 30 La.L.Rev. 508 (1970). Such an interpretation of Civil Code Article 2531 would also tend to defeat the purpose of replacing the parties in the same position in which they were before the sale because it would unfairly penalize the seller in the situations where the use of the thing sold is substantially more valuable then the use of the purchase money. Instead, the court is required to independently assess the respective values received by the buyer and the seller and determine the extent to which one has been compensated by the other.
In La.Acts 1974, No. 673 Civil Code Art. 2531 was amended to specifically provide that the seller is entitled to a credit for the purchaser's use of the thing sold. The Act did not expressly provide for compensation of the purchaser for the seller's use of the purchase price. Arguably, the Legislature may have intended to assure such compensation by reenacting the buyer's right to reimbursement of reasonable expenses occasioned by the sale. Of course, we do not reach the question in this case because the parties' rights and obligations were fixed before the 1974 amendment to Article 2531.[2]
Applying the principles discussed above, we conclude that the defendants were entitled to compensation for plaintiff's use of the truck while it was in his possession, and that plaintiff was entitled to compensation for the dealer's use of the purchase money. The $1,200 credit allowed by the trial judge for the use of the truck appears reasonable, and we find that it is fully supported by the evidence including the testimony of the plaintiff himself. The question of the amount to be allowed plaintiff for the use of the purchase money is intertwined with the issue of the reimbursement of finance charges to the purchaser, and we will consider these matters together later.
Plaintiff also contends that the trial court erred in allowing defendants a credit for the plaintiff's use of the truck because the defendants did not affirmatively plead a setoff or counterclaim for this item and, consequently, evidence on this issue was not properly admissible. We find no merit in this contention, because the compensation of the seller for the use of the thing by the buyer is not an affirmative defense which must be set forth in the answer in accordance with La.Code of Civil Procedure Article 1005. The plaintiff stated a cause of action in redhibition and in fact alleged in his petition that he had *89 made use of the truck. He therefore had notice that under Article 2531 of the Civil Code and the jurisprudence his use of the truck would be one of the factors to be considered by the court in returning the parties to their original position in the event the sale was rescinded. Since the issue is one which is inherently involved in a redhibitory action, the evidence pertaining to it was within the issues made by the pleadings, and, therefore, no amendment of the pleadings was required by La.C.C.P. Art. 1154 in order to allow its introduction.

4. Reimbursement of Finance Charges and Compensation For Use of Purchase Price
In a redhibitory action the buyer may recover from the seller finance charges incidental to the purchase, as an expense of the sale. Media Production Consultants, Inc. v. Mercedes-Benz of N. A., Inc., supra; Johnson v. H. W. Parson Motors, Inc., 231 So.2d 73 (La.App., 1st Cir. 1970); Cain v. Rapides Dodge, Inc., 207 So.2d 918 (La.App., 3d Cir. 1968).
Plaintiff presented testimony from a bank executive that the plaintiff incurred interest expense of $356.55 on a principal amount of $2,993.70 from the date of the loan to the date of the trial. He stated that the loan was payable in 36 monthly installments, at an annual percentage rate of 9.31, and that he had figured a rebate by the "Rule of 78".
However, the trial judge determined from the chattel mortgage and other evidence that plaintiff had been given credit for a trade-in and the portion of the purchase price financed was only $1,047. He concluded there was no evidence by which to compute the interest on this amount and rejected plaintiff's claim for finance charges entirely.
The trial judge was correct in finding that the portion of the principal amount of the loan directly related to the sale was only $1,047. The additional amount plaintiff owed the bank apparently resulted from a previous loan related to the automobile which plaintiff traded in to make up the balance of the purchase price. But we find there is sufficient evidence in the record by which to compute the interest on this amount. Using the data provided by the bank official, we calculate that plaintiff is entitled to approximately $125 as reimbursement of finance charges on the amount of $1,047, which he borrowed from the bank specifically for making the purchase.
We now turn to a determination of the compensation due the buyer for the seller's use of the purchase price. The purchaser should not receive any additional compensation from the dealer for the use of the $1,047 portion borrowed from the bank. Since we have decided he is entitled to repayment of finance charges on this amount such a double payment would constitute unjust enrichment. The balance of the purchase price represented by a tradein in this case, amounted to $1,833. In order to fairly compensate the purchaser for the seller's use of this portion of the purchase price he should receive the legal rate of interest of 7% per annum thereon from the date of the sale until the date of the trial, which was the 19 month period during which the trial court determined the purchaser had use of the vehicle. Civil Code Arts. 1938, 1940. Accordingly, we will award plaintiff $203.15 to reimburse him for the seller's use of the trade-in portion of the purchase price.

Conclusion
In summary, we find that plaintiff is entitled to judgment against both defendants, *90 in solido, for reimbursement of the following:

Purchase price and sales taxes $2,921.88
Finance charges and compensation
for use of purchase price 328.15

that defendants are entitled to a credit against these amounts in the sum of $1,200 as compensation for plaintiff's use of the truck; and that plaintiff is entitled to judgment against General Motors Corporation for attorneys' fees equal to 1/3 of the net amount, or $683.34.
For the reasons assigned, the judgment is recast so as to read in pertinent part as follows:
It is Ordered, Adjudged and Decreed that there be judgment herein in favor of the plaintiff, Robert N. Smith, and against the defendants, Max Thieme Chevrolet Company, Inc. and General Motors Corporation, in solido, in the sum of $2,050.03 together with legal interest from August 3, 1973, the date of judicial demand, until paid.
It is Further Ordered, Adjudged and Decreed that there be judgment herein in favor of the plaintiff, Robert N. Smith, and against the defendant, General Motors Corporation, as an award of attorneys' fees in this matter, in the sum of $683.34.
It is Further Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiff, Robert N. Smith and against the defendant, Max Thieme Chevrolet Company, Inc., rescinding and setting aside the sale of one 1972 Chevrolet Luv pickup truck, identification number LUV-8223113, made on August 3, 1972, by Max Thieme Chevrolet Company, Inc. to Robert N. Smith.
It is Further Ordered, Adjudged and Decreed that the defendants be cast with all costs of these proceedings.
Reversed in part, affirmed in part, and rendered.
NOTES
[1] Art. 2531, as amended by Acts 1974, No. 673, provides:

"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect." Noted, 49 Tul.L.Rev. 484 (1975); See Barham, Redhibition: A Comparative Comment, 49 Tul.L.Rev. 376 (1975).
The act affects substantive rights and its language does not require its retrospective operation. Therefore, it has no application to the parties' rights and obligations herein which were vested prior to its enactment. C.C. Art. 8.
[2] For an excellent discussion of the possible effects of the legislation, see Note, 49 Tul.L.Rev. 484 (1975).