347 So.2d 504 (1977)
Edward A. BOUDREAUX
v.
MAZDA MOTORS OF AMERICA, INC.
No. 7830.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1977.
Rehearing Denied June 30, 1977.
*505 Thomas L. Giraud, Charles A. Verderame, New Orleans, for plaintiff-appellee.
R. King Milling, John T. Nesser, III, Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, for defendant-appellant.
Before SAMUEL, REDMANN, BOUTALL, SCHOTT and BEER, JJ.
REDMANN, Judge.
Defendant appeals from a judgment decreeing avoidance of the February, 1974 sale of a new Mazda automobile because of a redhibitory defect and allowing defendant no credit for the use plaintiff had of the car (11,000 miles before demand, 18,000 more before trial). Plaintiff by answer seeks attorney's fees for the appeal alone. The questions are whether the car was so defective that it "must be supposed", La.C.C. 2520, that the purchaser would not have bought it had he known of the defect, and, if so, whether credit against the return of the purchase price is due for the use of the car.
There is sufficient evidence, first of disc brake pad glazing (causing ineffectiveness of brakes)[1] and secondaccording to defendant's best-qualified expertof this car's brakes' having been used conservatively (eliminating driver abuse as a cause of the glazing), to support the trial judge's conclusion that the brakes were "seriously defective" and that redhibition was warranted.
There is also sufficient evidence to support the trial judge's conclusion that the two accidents (in which plaintiff's car rearended others) were caused by the defective brakes. The owner husband's testimony that the defective brakes caused the second accident is the only evidence of its cause. The trial judge's attributing the first accident to defective brakes is not inconsistent with the investigating police officer's testimony that plaintiff's wife made no complaint at the time of defective brakes (in those words) but told him only that "she applied her brakes, hit a slick spot in the roadway and then came into contact with the other vehicle." The trial judge's evident inference, which we hold reasonable, was that the wife's statement that she had hit a "slick spot" was but an assumption on her part of some reason why the brakes did not work, and that it is more probable than not that the accident occurred because the brakes, now proven defective, did not properly hold. Thus defendants can neither defeat redhibition nor obtain any credit on the theory that the car is not in the same state as when sold, because its not being in the same state is due to its originally defective condition; C.C. 2532 and 2536.
We also affirm the trial court's determination that the seller has not shown any entitlement to credit for the purchaser's use of the automobile, unless against the "expense of sale", by implication from C.C. 2531 (prior to its amendment by La. Acts 1974 No. 673) insofar as use may be equated to fruits.[2] C.C. 2531 originally provided:
The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.
C.C. 2545 provides that the seller who knows of the defect is further liable for damages, but it does not provide that such a seller should get any credit for use or fruits that the good-faith seller is denied by art. *506 2531. (Our defendant, the manufacturer, is presumed to know the defects of the thing he manufactures; Rey v. Cuccia, La.1974, 298 So.2d 840; Moreno's Inc. v. Lake Charles Catholic H.S. Inc., La.1975, 315 So.2d 660.)
Included in the expenses of sale are any finance charges, Prince v. Paretti Pontiac Co., Inc., La.1973, 281 So.2d 112, although finance charges for the borrowed portion of the price also constitute the value of the use of that portion of the price, Smith v. Max Thieme Chev. Co., Inc., La.App. 2 Cir. 1975, 315 So.2d 82, so that the fundamental presumption and rule (Farmer v. Fisk, La.1844, 9 Rob. 351; Harvey v. Kendall, 1847, 2 La.Ann. 748; see also Note, 1970, 30 La.L. Rev. 508) of equivalence of use of thing by purchaser and use of price by seller demands that the buyer not both recover the finance charges and defeat the seller's claim for credit for use (a claim not present in Prince).
There is no proof of the value of the use of the automobile and we therefore reject defendant's claim for credit except to the extent of the value of use of the purchase price. We especially reject defendant's theory that we could charge plaintiff 12 cents a mile for his 28,500 miles of use, or $3,420, on a theory like that of Breaux v. Winnebago Industries, Inc., La.App. 1 Cir. 1973, 282 So.2d 763 (which itself noted "no established rule . . . arbitrary assessments. . .", at p. 769). Breaux adopted governmental agencies' allowance of 12 cents a mile [now 16?] as a reasonable credit. What may be reasonable recompense for use of a $12,000 mobile home, however, is not necessarily reasonable for use of a $4,400 subcompact automobile. (We further note that mileage "allowances" include gasoline, oil, tires, insurance, maintenance, etc. At 12 cents a mile, it would take 100,000 miles of use of the mobile home to equal its $12,000 price; but only 37,000 miles of use of the car would entitled the seller to 100% credit against its $4,400 price.)
Following the Supreme Court in Farmer and Harvey, we adopt the basic equivalence of use-of-thing and use-of-price because no evidence justifies any different result. While we therefore affirm the refusal of credit for use of the car, we do amend to eliminate plaintiff's recovery of $412.52 finance charge, since to make defendant pay the finance charge would deprive defendant of the use-of-price equivalent to the use of thing which plaintiff has had; Smith, supra. We also amend to make interest on the judgment for return of the price run from the return of the automobile, since plaintiff has continued to exercise the presumably equivalent use of the car at all times.
Finally, on authority of C.C. 2545 (as amended, Acts 1968 No. 84), we grant plaintiff's request for attorney's fees for the appeal alone. C.C.P. 862 provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." And C.C.P. 2164 provides that "[t]he appellate court shall render any judgment which is just, legal and proper upon the record on appeal." We have increased attorney's fees awarded by the trial court to recompense for additional services on appeal in Dunlap v. Chrysler Mtrs. Corp., La.App. 4 Cir. 1974, 299 So.2d 495. We now implement C.C. 2545 for attorney's fees for the appeal by itself, although attorney's fees were not prayed for (except in brief) or awarded in the trial court. We award $500 for representation on the appeal alone.
The judgment in favor of plaintiff is reduced to $4,426.59, with legal interest from return of the automobile to defendant, plus $500 attorney's fees and all costs.
SAMUEL and BEER, JJ., dissenting.
SAMUEL, Judge, dissenting.
I respectfully dissent for the reasons expressed by Beer, J.
BEER, Judge, dissenting.
I acknowledge that this purchaser has been inconvenienced. Yet, the defects complained *507 of clearly did not render the automobile useless. Quite the contrary. Boudreaux had driven the vehicle approximately 29,000 miles by the time of trial and, no doubt, still continues to use it. Furthermore, the vehicle had been in two accidents, causing substantial damages to the body and components. I find no credible evidence to support a finding that defective brakes caused either of those accidents. I believe that the record supports a finding to the contrary. Officer Truman Rudolph Boudreaux testified that he investigated the accident on June 5, 1974. He gave no indication of a problem with the brakes as causing or contributing to the accident. To the contrary, Mrs. Boudreaux stated that the vehicle in front of her suddenly stopped; she applied her brakes, "hit a slick spot in the roadway" and then collided into the rear of the preceding vehicle. The second accident on July 5, 1974, was not even investigated nor was the car repaired thereafter.
Plaintiff further claims that the engine runs "rough" and "misses." This contention is untenable as a basis for redhibition in light of plaintiff's unequivocal admission that he uses regular or ethyl gasoline instead of low-lead or no lead which is the recommended fuel. The trial court did not allude to, nor do I find, a redhibitory defect in the engine or its performance.
In my view, the object of the redhibitory action is to place the parties in the same positions they were in prior to the sale as nearly as possible under the circumstances. Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La.App. 2nd Cir., 1975). Yet, the circumstances here present make that virtually impossible. Accordingly, I believe that a reduction in the purchase price, quanti minoris, should have been the form of relief granted instead of rescission. See: LSA-C.C. Art. 2543; Ingersoll v. Star Chrysler, Inc., 234 So.2d 85 (La.App. 4th Cir., 1970), writ ref., 256 La. 365, 236 So.2d 499; Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir., 1975).
Accordingly, I respectfully dissent.
NOTES
[1] That the problem was not so simple as defective pads is supported by the testimony of a former Mazda mechanic that one of five cars of plaintiff's model experienced brake trouble and by plaintiff's testimony that replacement pads afforded only temporary relief. Plaintiff was taught to "down-shift" his car so as to use the braking power of the engine to assist in stopping.
[2] Despite the ancient categorization of an owner's rights into usus, fructus, and abusus, we have previously recognized an equality of usus with fructus in concluding that "a [marital] community which uses as its home a house belonging to the husband's separate estate does receive the `profits' [C.C. 2402] of that house." Hurta v. Hurta, La.App.1972, 260 So.2d 324, 327.