686 So.2d 935 (1996)
GRIMALDI CONSTRUCTION, INC. et al.
v.
J.P. AND SONS CONTRACTORS, INC., New Orleans Cement Products Company.
NEW ORLEANS CEMENT PRODUCTS COMPANY, INC.
v.
J.P. AND SONS CONTRACTORS, INC., Grimaldi Construction, Inc., Fidelity & Deposit Company of Maryland and the Parish of Jefferson.
Nos. 96-CA-470, 96-CA-471.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1996.
*936 Fred L. Herman, James L. Arruebarrena, New Orleans, for Plaintiffs/Appellants Grimaldi Construction, Inc. and Fidelity & Deposit Company of Maryland.
Burt K. Carnahan, Diana L. Tonagel, Metairie, for Defendant/Appellant/Appellee New Orleans Cement Products Company.
John D. Lambert, Jr., New Orleans, for Plaintiff/Appellant/Appellee New Orleans Cement Products Company.
Before BOWES, GRISBAUM and DALEY, JJ
DALEY, Judge.
Appellants, Grimaldi Construction Company (Grimaldi) and LTH Construction (LTH)[1], appeal the trial court's grant of Summary Judgment and an Exception of No Right of Action in favor of mover, New Orleans Cement Products, Inc. (N.O.Cement). Second appellant, N.O. Cement, asks this court to reinstate its third party demand against Louisiana Industries (LI) in the event this court reverses the grant of summary judgment in its favor[2]. We reverse both the summary judgment and the grant of the exception of no right of action, and remand.

FACTS
On or about October 30, 1992, a contract was entered into between Grimaldi as general contractor and the Parish of Jefferson as owner for the construction of improvements at 1855 Ames Blvd., Marrero, known as the West Bank Health Unit (project). Grimaldi subcontracted with a sister corporation, LTH, for certain mechanical, sewerage, and drainage work. J.P. & Sons Contractors, Inc. (JPSC) subcontracted with LTH for the subsurface drainage at the project. N.O. Cement sold concrete pipe and other structures to JPSC for use in the drainage system, to be delivered to J.P. & Sons, Inc. (Sons), a separate entity from JPSC.
N.O. Cement purchased the concrete pipe and other structures from LI, who manufactured the pipe, on or about January 8, 1993. The pipe was delivered in stages to the construction site, with the last delivery occurring around May 27, 1993. Around the first week of June, 1993, after JPSC had installed and buried approximately 80 percent of the pipe, an independent inspection contractor (Delta Testing of Kenner) found that approximately 28 percent of the remaining, unburied pipe was defective. Apparently under the contract, Delta was supposed to test the pipe before it was buried, and apparently this inspection did not occur.
On June 16, 1993, N.Y. Associates sent a letter to Grimaldi wherein N.Y. expressed concern that the entire drainage system was substandard, in part because of the results of the inspection of the unused pipe.
On July 2, 1993, N.Y. Associates sent a second letter to Grimaldi, wherein they referenced test and inspection reports from Professional Service Industries, Inc., for 1991 and 1992 regarding LI's concrete pipe. Michael Mattax, the Vice President of N.Y. Associates, opined that the pipe delivered to the project site was in accordance with ASTM C76 Standard Specifications for a Class III reinforced concrete pipe, Type B wall and Type 3 joint.
On December 8, 1993, D & L Contractors conducted a video camera inspection of the installed pipe. The video testing revealed numerous problems with the drainage system, including leaks, hairline cracks, and improperly *937 exposed reinforcing wire in the pipes. JPSC was removed from the project, and remedial work proceeded.
On September 8, 1994, Grimaldi's Second Amended Petition added N.O. Cement as a defendant, alleging various problems with the pipe. Grimaldi also pled the defense of set-off and the redhibitory defects in its answer to N.O. Cement's suit on open account. However, Grimaldi did not assert a cause of action in redhibition by that name against N.O. Cement until March 28, 1995, when it filed its Fourth Amended Petition.

PROCEDURAL HISTORY
This appeal concerns two of four consolidated suits[3] that arose from this construction project.
The first suit in this consolidated matter (455-009, which corresponds to appeal 96-CA-470) was instituted on October 3, 1993, when Grimaldi and LTH filed a joint petition alleging Sons' breach of contract. The petition alleged various acts whereby Sons breached its contract with LTH, all of which pertained to either the quality of workmanship or the work's violations of contract specifications; this first petition does not allege redhibitory or other defects in the concrete pipe, and does not name N.O. Cement as a defendant. N.O. Cement is named as a defendant in the Second Amended Petition, filed September 8, 1994.
The second suit (466-245, appeal 96-CA-471) was filed on July 18, 1994 by N.O. Cement against four defendants (JPSC, The Parish of Jefferson, Fidelity, and Grimaldi). This is a suit on Open Account and to Enforce Lien under the Public Works Act, alleging that the defendants owed N.O. Cement $84,498.87 on open account for the materials N.O. Cement supplied for the project. The two matters were ordered consolidated on November 2, 1994.
On November 21, 1995, the trial court conducted a hearing on various motions. Before the court was N.O. Cement's Second Motion for Summary Judgment (their first one, filed March 28, 1995, having apparently been denied though no ruling appears in the record), their Exception of No Right of Action, their Motion for Sanctions against Grimaldi, and a Dilatory Exception of Improper Joinder of Parties Plaintiff and Peremptory Exception of No Cause of Action filed by JPSC and Sons against Grimaldi. N.O. Cement's Second Motion for Summary Judgment requested relief in both suits: to have Grimaldi's petitions against them dismissed in 455-009, and to have summary judgment entered in its open account suit in 466-245.
The judgment appealed from was rendered December 15, 1995. It grants relief to various parties, without written reasons:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of New Orleans Cement Products, Inc., and against Grimaldi Construction, Inc., granting their Motion for Summary Judgment and Exception of No Right of Action.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Grimaldi Construction and against New Orleans Cement Products Company, denying the Motion for Sanctions.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Grimaldi Construction and against J.P. & Sons Contractors, Inc., and J.P. & Sons, Inc.'s Exceptions of Improper Joinder of Parties Plaintiff and No Cause of Action.[4]

LAW AND ANALYSIS
The judgment appealed from herein is vague and devoid of guidance concerning whether it grants the relief N.O. Cement requested in both suits or in one or the other. Because the summary judgment did not reduce the open account suit to a money judgment, we find that this judgment granted N.O. Cement relief in suit 455-009 only, dismissing them as a defendant in Grimaldi's suit for breach of contract.
On appeal, Grimaldi argues that N.O. Cement's motion for summary judgment (the *938 first paragraph of the above excerpted judgment) was improperly granted on several bases. First, they argue that if the summary judgment was granted on the basis that their redhibition claim against N.O. Cement was prescribed, the trial court erred, because as a matter of law, a prescribed claim that is incidental to the main demand may be asserted as a defense to the main demand. Second, Grimaldi argues that if the summary judgment was granted on the merits (no redhibitory defect existed in the pipes), the trial court must have applied the wrong standard in viewing the evidence (i.e. the evidence of the mover is to be viewed strictly while the opposing party's is to be treated indulgently).
N.O. Cement's Motion for Summary Judgment argues several points. First, they argue that they are a vendor, and not a subcontractor, and that a vendor only has to prove delivery of the items (arguing that redhibition does not apply to them). They argue that the concrete pipe was accepted at the delivery site, and at that moment they ceased to have any control over the pipe. Mover presented drayage tickets to evidence delivery and acceptance. N.O. Cement implies that if the pipes were later found defective, some other party must have damaged them as they moved the pipes around the construction site. They also point out that Grimaldi's first petition alleges Sons's faulty workmanship, not defective pipe, despite the fact that this petition was filed after the unburied pipe was found defective.
N.O. Cement's motion and memorandum also reference and attach purchase orders from Grimaldi/LTH to N.O. Cement for replacement pipe, which was ordered and paid for by Grimaldi to replace defective pipe. N.O. Cement argues that Grimaldi would not have paid for replacement pipe if the original pipe had been defective: it would have demanded replacement pipe at no charge.
The trial court's grant of summary judgment does not appear to rule on the issue of whether Grimaldi's redhibition cause of action against N.O. Cement is prescribed. Therefore, we do not address that issue.

Summary Judgment
A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.-C.C.P. Article 966. The burden is on the mover to establish that no material fact issues exist. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991).
Any decision as to the propriety of granting summary judgment motion must be made with reference to the substantive law applicable to the case. Security Homestead Federal Savings Corp. v. Ullo, 589 So.2d 5 (La. App. 5 Cir.1991).
Grimaldi's cause of action against N.O. Cement is in redhibition. In Poche v. Bayliner Marine Corporation, 93-721 (La. App. 5 Cir. 2/9/94), 632 So.2d 1170, this court said:
... In Louisiana, sellers are bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use. Rey v. Cuccia, 298 So.2d 840 (La.1974); Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992). LSA-C.C. art. 2521 provides that apparent defects are those defects which the buyer might have discovered by simple inspection and that apparent defects are not among the number of redhibitory vices. Hidden defects are those which cannot be discovered by simple inspection. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La. App. 1st Cir.1992). To determine whether a defect is apparent upon simple inspection the courts have questioned whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. Fitzmorris v. Kelly, 244 La. 323, 152 So.2d 36 (La.1963). Whether an inspection is reasonable depends on the facts of each individual case. Creger v. Robertson, 542 So.2d 1090 (La. App. 2nd Cir.1989); Landaiche v. Supreme Chevrolet, Inc., supra.
Where defects are such that they render the use of the purchased object inconvenient and imperfect to the extent that the buyer would not have purchased the item *939 had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Davidson v. New Roads Motor Co. Inc., 385 So.2d 319 (La.App. 1st Cir.1980), writ denied, 391 So.2d 454 (La.1980); Young v. Ford Motor Co. Inc., supra.
The existence of a redhibitory defect is a question of fact. Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3 Cir.1986). The buyer's knowledge of a defect at the time of sale is also a question of fact. Drosdal v. Hurstell, 540 So.2d 606 (La.App. 5 Cir.1989). Proof of a redhibitory defect at the time of sale can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. Rosenthal v. Clearview Dodge Sales, Inc., 464 So.2d 777 (La.App. 5 Cir.1985).
N.O. Cement submitted three affidavits in support of its Motion. The first is from Michael Mattax, Vice President and Director of Architecture of N.Y. Associates. (He was the author of the June 16 and July 2, 1993 letters to Grimaldi.) This affidavit reiterates the substance of the July 2 letter wherein Mattax opines that the pipe was in accordance with ASTM C76 Standard Specifications for a Class III reinforced concrete pipe.
The second affiant was Rick Entwisle, a Louisiana Department of Transportation and Development State Certified Inspector for construction projects, employed by Design Engineers, Inc. Between January, 1991 and March 1994, he was employed by N.Y. Associates. In his role of inspector, on the last four to five months of the project, no pipe was delivered by N.O. Cement which was found to be defective, unacceptable, or not within the design specification outlined by his employer. Further, during his tenure as inspector on this project, which was not the length of the entire project, all the concrete pipe and products delivered by N.O. Cement were vigorously inspected and were all found to be in accordance with the ASTM C76 standard specifications.
The third affiant was Oliver S. Delery, Jr., President of N.O. Cement. His affidavit attests to the validity of N.O. Cement's open account.
Grimaldi counters these affidavits with two from Clem Betpouey III. Betpouey was a consultant to Grimaldi on the project, and had 40 years experience in the utility construction industry. He was present on the project on a daily basis for over five months. He states that much of the pipe was installed and buried without testing by Delta Testing of Kenner, as required by the shop drawings, and that the defects which were discovered in the video testing are likely "latent" defects that would not have been discoverable upon simple inspection on delivery. He also attests in a second affidavit that in his experience, the fact that material is accepted for delivery on a construction site does not necessarily mean that that material has been inspected for defects.
N.O. Cement's affidavits and documents submitted in support of its Motion for Summary Judgment do not resolve issues of material fact. Questions of material fact that still loom large are: what defects, if any, exist in the pipe? If defects exist, when were they discovered? If the defects exist, what and/or who caused the defects, and when were they caused? Mattax's letter of July 2 notes that the pipes were inspected in 1991 and 1992, but that they were buried without any additional on-site inspection. Betpouey's affidavit raises the question of whether the delivery acceptance signifies that the pipes were inspected for their quality or whether they were merely noted to be the type ordered by the subcontractor. Scrutinizing mover's evidence and documents closely, and looking at Grimaldi's countering affidavits and documents indulgently, we find that the trial court's grant of summary judgment in favor of N.O. Cement at this time was error.

Exception of No Right of Action
Also at issue is the trial court's grant of an Exception of No Right of Action in favor of N.O. Cement against Grimaldi. The purpose of an exception of no right of action is to test the interest of that plaintiff in bringing the suit. LSA-C.C. art. 927; Dufour v. Westlawn Cemeteries, Inc., 94-81 (La. App. 5 Cir. 6/28/94), 639 So.2d 843.
*940 N.O. Cement argues that there is no privity of contract between it and Grimaldi, and therefore Grimaldi has no right to bring suit against them. However, a consumer/purchaser without privity may recover against the original seller in redhibition for breach of warranty. Media Pro Consult, Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972), on remand, 264 So.2d 686 (La.App. 4th Cir.1972); Franks v. Royal Oldsmobile Co. Inc., 605 So.2d 633 (La.App. 5 Cir.1992).
We hereby reverse the trial court's judgment which granted summary judgment in favor of N.O. Cement and against Grimaldi, and we also reverse the trial court's grant of the Exception of No Right of Action. This case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Fidelity & Deposit Company of Maryland (Fidelity) is also an appellant. They issued a performance bond to Grimaldi. For simplicity, these three appellants are meant when we refer to Grimaldi.
[2] Louisiana Industries filed a Motion for Summary Judgment to N.O. Cement's third party demand against it on 10-16-95, in suit 455-009. The record on appeal does not contain a ruling on LI's motion or a dismissal of them. The grant of the summary judgment in favor of N.O. Cement rendered LI's motion moot.
[3] The other two suits are not pertinent to this appeal.
[4] The first excerpted paragraph of the judgment constitutes the appealed portion.