210 So.2d 569 (1968)
I. G. KIEFER
v.
BERNIE DUMAS BUICK COMPANY, Inc. and General Motors Corporation.
No. 3067.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
Rehearing Denied June 10, 1968.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, Ignatz G. Kiefer, New Orleans, in pro. per., for plaintiff-appellee.
Beard, Blue, Schmitt & Treen, Melvin W. Mathes, New Orleans, for Bernie Dumas Buick Company, Inc., defendant-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, David L. Campbell, New Orleans, for General Motors Corp., defendant-appellee.
Before YARRUT, SAMUEL and JOHNSON, JJ.
YARRUT, Judge.
This suit was filed by Plaintiff for the rescission of a sale, made on September 25, 1965, of a 1965 Buick 225 Electra Convertible, against Bernie Dumas Buick Company, *570 Inc. (hereinafter referred to as Bernie Dumas); and the manufacturer, General Motors Corporation (hereinafter referred to as General Motors). The suit is for $15,238.00, plus interest and costs, which amount includes the return of the purchase price, interest, closing costs, licenses and taxes, repairs, insurance coverage, loss of use and inconvenience, nervousness and mental anxiety, and attorney's fees; or, alternatively, for a reduction of the purchase price of the vehicle; all due to defects and malfunctions in the automobile; and on the ground of fraud on the part of Defendants in the sale to Plaintiff. Defendants denied any liability whatsoever.
The District Court rendered judgment for Plaintiff against Bernie Dumas only, rescinding the sale and awarding Plaintiff $4,485.50, less a credit of $1,000.00 for the use of the vehicle, and $17.82 for costs of repair, with legal interest. The Court held the vehicle was completely defective, and nullified the sale on the basis of fraud as contended by Plaintiff; and dismissed the suit as to General Motors.
Both Bernie Dumas and Plaintiff have appealed. Plaintiff contends the District Judge was in error in allowing a credit for the use of the automobile, and for refusing to award attorney's fees, interest and insurance on the vehicle. In this Court, Plaintiff abandoned his appeal from the judgment dismissing General Motors.
Bernie Dumas contends Plaintiff waived his implied legal warranty, accepting instead the 24-month manufacturer's warranty. We pretermit this question because we find, as did the Trial Judge, that the Defendant was in bad faith. Plaintiff, of course, did not waive his warranty against a fraudulent sale.
The record reveals there were numerous defects and malfunctions of the automobile purchased by Plaintiff, among which were: The breakdown of the electrical system, which occurred about 100 times; failure of the brakes; a defective convertible top, which could not be lowered and which leaked; a paint job which early showed evidence of corrosion; faulty heater, air conditioning unit and radio, use of any of which would make the entire automobile inoperative; a defective right rear tire and axle, which caused a blowout on the highway; and a defective generator, heater and temperature indicator. Plaintiff testified he brought his car into the repair shop for servicing approximately 35 times during a 12-month period, to no avail.
It is undisputed that the automobile purchased by Plaintiff was parked on the Bernie Dumas lot on Chef Menteur Highway during Hurricane Betsy on September 9, 1965, in an area where widespread flooding occurred. Bernie Dumas made insurance claims for two cars on the same lot which were damaged by salt water, leading the Trial Judge to find as a fact, as do we, that Bernie Dumas had actual knowledge that there was a possibility that the automobile sold to Plaintiff was exposed to salt water damage. It was admitted by the Secretary-Treasurer and Business Manager of Bernie Dumas that, although insurance was collected for wind and water damage on most of the vehicles on the lot, they were all sold to the general public as new vehicles.
Moreover, we conclude, as did the Trial Judge, that the specific vehicle sold Plaintiff was exposed to salt water, although it was represented as new and undamaged. This fact was testified to by Roy Schmidt, a qualified expert in the field of automechanics, as well as a merchandising parts analyst, trained by General Motors Training School, who inspected the vehicle sold Plaintiff on four occasions. He testified:
"Q. * * * I ask you, sir, in your opinion do you consider this automobile to be absolutely defective?
A. I do.

*571 Q. I ask you * * *, sir, in your opinion as an expert, is this car dangerous?
A. It is.
Q. Mr. Schmidt, I ask you in the same connotation to consider the question and your four inspections on this vehicle and ask you, sir, if you have an opinion as to the cause of all of these difficulties and these problems with a brand new automobile such as I described to you?
A. Yes, I do in this particular car. In this area down here we had a lot of occasion to experience salt water damage due to Hurricane Betsy and these cars that were subjected to salt water, not necessarily submerging, but just suscepted to it, the wiring in the cars, all of the electrical systems tend to corrode and then tend to corrode in slow manner, and what seems to be happening to this Buick is just that the wires, one after another, one circuit after another, are just corroding away, and this also from the rust and the trunk, and the deep pitting and everything, it leads me to believe without a doubt that it was subjected to some type of salt water at one time or another."
Regarding amendment of the judgment for allowing $1,000.00 for the use of the automobile by Plaintiff, the District Judge, in his "Reasons for Judgment" on this point stated:
"While the Court concluded that the sale should be rescinded, as aforesaid, it does not believe that the automobile was rendered absolutely useless because the owner put approximately 20,000 miles on it prior to the date of trial. The purchase price was $4,500.00 and as a matter of discretion and based upon what the Court considers to be fair use for an automobile for some 20,000 miles for some 20 months, the Court is of the opinion that $1,800.00 would be fair use for an automobile for that number of miles and for that long. This is slightly less than $100.00 per month. Yet, the Court is also reminded that plaintiff did not have full use of this automobile during this period because of its defectiveness, etc. Accordingly, the Court does not believe that under these circumstances, the use of the automobile was worth more than $1,000.00 which means that defendant Dumas will have to return the purchase price, less $1,000.00. See Bergeron v. Mid-City Motors, Inc. [La.App.], 162 So.2d 835."
With regard to attorney's fees, the case of Chauvin v. La Hitte, 229 La. 94, 85 So.2d 43, is apposite here. In the cited case, the vendee successfully rescinded a sale because the vendor fraudulently sold a used car representing it to be new, but the Court did not award attorney's fees, stating the well-settled principle that attorney's fees are not assessable as an item of damages unless clearly provided for by statute or contract.
We, likewise, find the Trial Judge was correct in denying Plaintiff interest on his loan and insurance premiums, as these are not proper items of damages, especially in a case in which Plaintiff made use of the automobile for some twenty months before the date of trial.
We find no error in the judgment of the District Court; hence, the judgment is affirmed. Defendant is to pay all costs in both Courts, except the costs of Plaintiff on appeal, in view of Plaintiff's unsuccessful attempt to amend the judgment in his favor.
Affirmed.